IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-01435-WDM-BNB

JASON BARDALES,

Plaintiff,

v.

WESTERN STONE AND METAL d/b/a THE SHANE COMPANY,

Defendant.

---

## ORDER ON MOTION FOR SUMMARY JUDGMENT

---

Miller, J.

This case is before me on the motion for summary judgment filed by Defendant (doc no 27).  Plaintiff opposes the motion.  After review of the parties' written arguments and tendered evidence, I conclude oral argument is not required.  For the reasons that follow, I will grant the motion.

### Factual Background

This is an employment discrimination case pursuant to Title VII of the Civil Rights Act of 1964, as amended, Title I of the Civil Rights Act of 1991, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*  Plaintiff is a former sales manager of Defendant Western Stone and Metal d/b/a The Shane Company ("Western Stone").  His claims are based on his assertion that Western Stone discriminated against him by terminating his employment because of his national origin and/or age.  The following facts are undisputed or, where disputed, set forth in accordance with Plaintiff's evidence.

Western Stone is a jewelry retailer operating jewelry stores as The Shane

Company.  During the relevant time period, it operated two stores in the Denver area: one in Englewood and a second store in Westminster.  Plaintiff was born in 1959 and is of Mexican national origin.  Plaintiff joined Western Stone as a sales person in 1985 and through promotions became a Store Manager in 1997 at the Englewood store.  His supervisor, Russ Barton ("Barton"), recommended Plaintiff for the promotion.[1]  In 2002, however, Western Stone created a new management structure for the Denver stores.  In place of the Store Manager and other subsidiary positions, four to five "sales managers" would be responsible for the entire store, but would rotate responsibilities daily based on a posted schedule.  Plaintiff became a sales manager with no cut in pay.  The sales manager structure created confusion concerning lines of communication and responsibilities and was eliminated after Plaintiff's separation from the company.

Soon after the restructuring of the management system, Plaintiff was disciplined several times.  First, in January 2003, he was given a written reprimand.  In the incident giving rise to the reprimand, a customer at the Englewood store wished to purchase a specific ring that was not in stock.  Plaintiff called the Westminster store and spoke to a customer service associate and to the market shop foreman, who told Plaintiff that the ring was available there.  The customer decided to drive to the Westminster store to purchase the ring.  However, when the customer arrived, he learned that the ring had already been set aside for another customer.  Plaintiff was disciplined for failing to speak to a sales

---

[1]Although Plaintiff purports to dispute this, he offers only his belief or lack of knowledge about whether Barton recommended him for the promotion.  Accordingly, I consider this to be undisputed.  *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (at summary judgment, "'statements of mere belief' in an affidavit must be disregarded") (quotation omitted)

2

manager to ensure that the merchandise was available before sending the customer to the Westminster store.[2]

In the second incident, on March 12, 2003, Plaintiff was disciplined for mistakenly informing an employee that she had been placed on probation for chronic tardiness, when in fact her discipline was a written warning.  Plaintiff and Stephanie Larkins ("Larkins"), another sales manager, had recommended that the employee be given probation, but the human resources department decided that sanction was too severe because, among other reasons, there appeared to be confusion about the store's "lockout" time[3].  A human resources representative sent Plaintiff and Larkins an email with the revised disciplinary notice indicating the type of discipline and asked them to review it.  Neither Plaintiff nor Larkins noticed that the discipline imposed had been changed in the document to a written warning and so wrongly informed the employee during the counseling session.  Both Plaintiff and Larkins, who is non-Hispanic white and in her 30s, were disciplined for the error by being placed on a 90-day probation period.

––––––––––––––––––––

[2]Again, Plaintiff disputes this by asserting that the "former" customer service associate was a sales manager and that, therefore, he had in fact spoken to a sales manager (or, alternatively, that the market shop foreman was a "managerial" employee).  Because this proposition is unsupported and contradicts all the record evidence, including Plaintiff's own statements at the time, I consider it undisputed that Plaintiff did not speak to a sales manager at the Westminster store about the ring's availability.  *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.  To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.") (citations omitted).

[3]Before opening, the store is locked while merchandise is taken out of vaults and put on display in the store.

Several days later, additional discipline was imposed for a separate incident. A former employee called the Englewood store and informed a customer service associate that she was faxing a letter to the store and wanted it placed in an envelope addressed to the regional director, who at the time was Barton, and marked confidential. The customer service associate did so. Approximately two hours later, she observed Plaintiff and Larkins enter the office area. She saw Plaintiff open the envelope and read its contents and then share the letter with Larkins. Plaintiff then replaced the letter in the inter-office envelope and returned it to the outgoing mail. A few days later, Barton asked Plaintiff if he knew anything about the former employee's issues, which had been the subject of the letter. Plaintiff said he did not. About a week later, the customer service associate reported what she had seen Plaintiff do in the mail room. Plaintiff does not dispute the events but contends that he picked up the letter by mistake, put it back when he realized he should not be reading it, and misunderstood what Barton was asking him about when questioned. Western Stone and Barton believed that Plaintiff had breached confidentiality and then had been dishonest when questioned about it. Plaintiff was placed on indefinite probation and informed that he could be terminated if he committed another infraction. Plaintiff signed the disciplinary notice. Barton wanted to terminate Plaintiff's employment for this incident but another decisionmaker thought that probation was sufficient.

The final incident leading to Plaintiff's termination occurred in July 2003. A customer arrived to pick up merchandise being repaired; however, the order for the repairs had been misfiled and the job was not completed. Plaintiff was able to get the jewelry shop foreman to return to the store and complete the work but the customer had to wait some

time for the merchandise.  Although Plaintiff took care of the problem, he did not inform his superiors of the incident, did not discipline the associate who made the mistake, and did not take any steps to prevent future problem of that kind.  In addition, around the same time, Larkins informed management that Plaintiff had failed to discipline another associate who had been tardy five times in two weeks.  Plaintiff does not dispute these events, but argues that it was the job of the "lead manager" on duty that day to impose discipline and make a report.  He also argues that no other sales manager had imposed discipline on the tardy employee.  Plaintiff thus appears to acknowledge that all sales managers were responsible for discipline of associates.  Barton and Plaintiff's supervisor, Don Sheely, agreed that termination was appropriate and Plaintiff's employment with Western Stone ended around July 29, 2003.

Western Stone notes that it discharged two other sales managers, both non-Hispanic white and in their thirties, within the year following Plaintiff's termination.  Plaintiff provides evidence that several older employees in the sales department were also terminated around the same time and contends that he and others were replaced by younger, slimmer, non-minority women.

Plaintiff filed a timely charge with the Equal Employment Opportunity Commission.  After exhausting his administrative remedies, he filed this action asserting the following causes of action: (1) national origin discrimination in violation of Title VII; (2) age discrimination in violation of the ADEA.

<u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

A factual issue is genuine if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial,

it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence

for the nonmovant on an essential element of the nonmovant's claim.'"  *Bausman v.*

*Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart*

*Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  Then, "[t]o avoid summary judgment, the

nonmovant must establish, at a minimum, an inference of the presence of each element

essential to the case."  *Id*.

Discussion

Title VII prohibits an employer from terminating any individual because of "race,

color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), or because that

individual opposed unlawful discrimination, 42 U.S.C. § 2000e-3(a).  Section 1981, on the

other hand, "provides equal rights to make and enforce contracts and to the benefits of

laws for the security of persons and property."  *Maldonado v. City of Altus*, 433 F.3d 1294,

1307 (10th Cir. 2006).  The ADEA makes it unlawful for an employer to "discriminate

against any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Because Plaintiff

has not provided direct evidence of discrimination, I apply the burden-shifting regimen of

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Cortez v. Wal-Mart Stores,*

*Inc.,* 460 F.3d 1268, 1273 (10th Cir. 2005) (burden-shifting approach used in disparate

6

treatment claims under the ADEA).

Under this analysis, the plaintiff bears the initial burden of presenting a *prima facie* case of discrimination. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).  If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *Id.* at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the defendant presents such a reason, the plaintiff bears the "ultimate burden" of establishing that these proffered reasons are a pretext for unlawful discrimination. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000).

The plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy or credence and hence that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 1308 (10th Cir. 2005); *see also Kendrick*, 220 F.3d at 1230 (three ways of showing pretext are:  (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision).

The parties do not appear to dispute that Plaintiff has established a prima facie case of age and/or national origin discrimination.  Similarly, Western Stone has presented a legitimate, non-discriminatory reason for the termination, specifically, Plaintiff's

performance issues, most notably Plaintiff's reading of a confidential letter not addressed to him and denying knowledge of the subject. The ultimate burden, then, rests on Plaintiff to demonstrate that these disciplinary actions were a pretext for unlawful discrimination.

Plaintiff argues that pretext is shown because the stated reasons for discipline and termination were false. It is well-established in this circuit that ""[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (internal quotation marks and alteration omitted); *see also Kendrick*, 220 F.3d at 1231 ("[A] challenge of pretext requires us to look at the facts as they appear to the person making the decision to terminate plaintiff."). Thus, even if the stated reasons later prove to be untrue, I must examine whether the employer believed those reasons and made a good faith decision at the time of the discharge. "The reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Comp.,* 468 F.3d 1243, 1250 (10th Cir. 2006) (citations omitted).

Here, Plaintiff does not dispute the underlying events leading to his discipline but rather only how these events should have been interpreted. He offers an innocent explanation for his reading of the confidential letter and argues that other managers were also responsible for certain problems that resulted in his discipline. However, none of Plaintiff's evidence or arguments demonstrates that Western Stone did not believe in good faith that the grounds for discipline existed at the time. The documentation shows that

Western Stone considered Plaintiff's explanations and in some cases mitigated the punishment on that basis or rejected Plaintiff's position as an unworthy excuse.[4] Plaintiff also argues that the sales manager system caused many of his difficulties. While this may be true, it does not demonstrate that the reasons given for the discipline were false and a pretext for unlawful discrimination based on age. Plaintiff also argues that the falsity of the reasons is shown by his previous good performance and strong sales. However, since Western Stone never alleged that Plaintiff was discharged because of sales or performance issues before January 2003, this is not probative of Western Stone's good faith.

Plaintiff further contends that Western Stone's reasons for termination are not legitimate because the infractions were minor or "entirely fabricated." As discussed above, although Plaintiff may have had explanations for his conduct, this does not mean that the reasons given were false or fabricated. Similarly, it is not the role of this court to second-guess the priorities of an employer in determining whether misconduct merits discipline. My review of the disciplinary notices of other employees indicates that the company readily imposed discipline for seemingly minor infractions such as tardiness and failure to report

---

[4]For example, Plaintiff argues that, in the incident when he wrongly informed the employee she was on probation, no one ever told him that the discipline had been changed from what he recommended. However, Plaintiff does not dispute that the disciplinary notice was sent to him and that the notice identified the discipline as a written warning, but that he did not notice the change. Plaintiff's own probation notice makes clear that the company held Plaintiff responsible for his failure to examine the document. While this may not have been "wise, fair or correct," I see nothing to indicate that the decisionmakers fabricated a false charge against Plaintiff in order to wrongly set him up for termination, particularly since another equally culpable sales manager not in Plaintiff's protected class was given the identical discipline.

problems in the store.  Nothing presented by Plaintiff indicates that the discipline imposed was so disproportionate or unusual as to suggest that it was a pretext for unlawful discrimination.[5]

In addition, Plaintiff asserts that he was given harsher discipline than similarly situated employees outside of his protected class for the same conduct.  However, Plaintiff's evidence does not bear this out.  None of the employees identified by Plaintiff committed an infraction of a similar nature and seriousness as Plaintiff's reading a confidential letter addressed to a supervisor and then not disclosing his knowledge of it when asked.  Moreover, it does not appear that any other employee was on "indefinite probation" at the time he or she committed a violation of rules or policy.  Accordingly, the sales managers who incurred more infractions than Plaintiff without being terminated were not similarly situated to Plaintiff.  *See Rivera v. City and County of Denver*, 365 F.3d 912, 924 (10th Cir. 2004) (misconduct of other employees could reasonably be viewed as less serious than the plaintiff's dishonesty).

Other evidence indicates that discipline was imposed consistently on employees, regardless of age or national origin.  I note that when Plaintiff and Larkins wrongly informed a subordinate about the level of discipline imposed, both received exactly the same punishment – 90 days probation.  A plaintiff "can not pick and choose a person [he] perceives is a valid comparator who was allegedly treated more favorably, and completely

---

[5]Plaintiff also argues that the discipline was imposed in violation of a company policy precluding punishment when an employee makes a mistake.  However, Plaintiff did not provide any evidence of such a policy; his brief cites to "Exhibit 11," but no such exhibit was filed.  In addition, it appears that Western Stone reasonably considered that Plaintiff's conduct was culpable and not the result of an excusable mistake.

ignore a significant group of comparators who were treated equally or less favorably than [he]." *English v. Colo. Dept. of Corrections,* 248 F.3d 1002, 1012 (10th Cir. 2001) (quoting *Simpson v. Kay Jewelers*, 142 F.3d 639, 646-47 (3rd Cir.1998)).   The final incident, involving the misfiled repair job, does not indicate pretext despite the fact that Plaintiff was terminated for failing to report the problem or take steps to prevent it but the lead sales manager on duty (a white man in his thirties) was not.  It appears that Plaintiff discovered and managed the problem, not the lead sales manager, and it was reasonable for Western Stone to expect Plaintiff to take responsibility.[6]  Moreover, the lead sales manager was disciplined (90-day probation) for failing to report and prevent the incident and other misconduct around the same day as Plaintiff's termination, as was the market shop foreman (written warning).  The lead sales manager was also discharged a few months later.   There is no evidence that either was on probation at the time of Plaintiff's termination, which distinguishes them from Plaintiff.   That other employees were also disciplined for the same incident undermines Plaintiff's argument that he was singled out for discipline because of discriminatory motives.

Plaintiff's other evidence of pretext is that he made more money than his younger replacement, which he contends supports an inference that he was terminated because of his age.  Moreover, he argues that Western Stone was seeking to improve its sales by replacing its sales staff with a certain "type" of employee, specifically young, white, slender, stylish women.  He further notes that minorities were underrepresented in

---

[6]In addition, at the same time as this incident, Larkins informed management of Plaintiff's repeated failure to discipline an employee for tardiness, which was an additional violation of policy.

Western Stone's work force, particularly in management.  I disagree that a reasonable fact-finder could conclude that Plaintiff has shown pretext on these bases.

I have reviewed Plaintiff's evidence concerning the individuals involuntarily separated from Western Stone.  Among those in sales or customer service, it appears that five employees were under 40 (including the employee that replaced Plaintiff) and five were over 40 (including Plaintiff).  I note that several of the discharged employees, including older employees, were disciplined by Plaintiff, which undermines his claim that the discipline and terminations were discriminatory.  Other than Plaintiff and one employee identified as black, all of the discharged employees were white.  Even without information that could eliminate non-discriminatory reasons for the termination of these employees, Plaintiff's mere numbers show no pattern suggestive of a discriminatory motive.  *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177 (10th Cir. 2006) (noting that evidence of low numbers of minority employees says little about reasons for plaintiff's termination and that "overall employment statistics have little bearing on the specific intentions of the employer in making particular [employment] decisions ... [and] will rarely suffice to rebut an employer's legitimate, nondiscriminatory reasons for a particular adverse employment action.") (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1319 (10th Cir.1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).  In addition, while Plaintiff has presented evidence that Western Stone managers sometimes expressed doubts over hiring particular older job applicants, standing alone this does not demonstrate that Plaintiff or other older workers were discharged for discriminatory reasons.

12

Finally, Plaintiff relies on several remarks in the workplace over several years to support his claim of national origin discrimination.  First, he identifies an incident in 1990 when a subordinate used the term "spic" and was not immediately and severely disciplined (she was eventually required to apologize).  Aside from the problem that this comment was made by a subordinate, not a decisionmaker, it is far too remote in time to have any connection to the alleged discriminatory actions occurring over a decade later.  Plaintiff then identifies two issues involving Barton: (1) Barton occasionally asked Plaintiff's opinion concerning Hispanic employees or customers; (2) Barton once used the term "Beantown" when referring to Tijuana, Mexico.  I conclude that these stray comments are insufficient to demonstrate pretext.

In order to prevail, a plaintiff must demonstrate a nexus between allegedly discriminatory statements made by a supervisor and the defendant's decision to terminate the plaintiff.  *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994).  To demonstrate the causal nexus, the plaintiff must show that "the allegedly discriminatory comments were directed at [the plaintiff], her position, or the defendant's policy which resulted in the adverse action taken against the plaintiff."  *Id.*  The "Beantown" comment was not directed at Plaintiff, his work performance, or any policy resulting in an adverse action.[7]  Similarly, while Barton may have engaged in some stereotyping by assuming that Plaintiff could provide insight on any Hispanic person or issue, I again see no evidence that this infected his decision to end Plaintiff's employment, particularly since Barton had

___

[7]Defendant's effort to minimize the offensiveness of the term, as used in this context, by noting that Boston is nicknamed "Beantown" as well is unavailing.

13

previously recommended Plaintiff for a promotion and gave him several favorable performance evaluations.[8]

## Conclusion

I conclude that Plaintiff has failed to carry his burden to set forth admissible evidence sufficient for a reasonable fact-finder to find that Western Stone's legitimate reason for terminating his employment was a pretext for unlawful discrimination.

Accordingly, it is ordered:

1.    The motion for summary judgment (doc no 27) is granted and this case is dismissed with prejudice.

2.    Defendant may have its costs as the prevailing party.

DATED at Denver, Colorado, on April 10, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge

---

[8]Defendant urges me to adopt a "same actor" inference, noting that Barton recommended Plaintiff for a promotion in 1997 and also made the decision to terminate Plaintiff's employment.  *See Antonio,* 458 F.3d at 1183 (where employee was hired and fired by the same actor within a relatively short time span, there is a strong inference that the employer's stated reason for acting against the employee is not pretextual).  I decline to make a "strong" inference because of the lengthy time period (six years) between those events, but still consider this fact relevant.